MCKOOL SMITH HENNIGAN, P.C.
J. MICHAEL HENNIGAN (SBN 59491)
hennigan@mckoolsmithhennigan.com
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

MCKOOL SMITH HENNIGAN, P.C.
COURTLAND L. REICHMAN (SBN 268873)
creichman@mckoolsmith.com
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065
Telephone: (650) 394-1401
Facsimile: (650) 394-1422

ZWERLING, SCHACHTER & ZWERLING, LLP
ROBIN F. ZWERLING (*pro hac vice*)
rzwerling@zsz.com
JEFFREY C. ZWERLING (*pro hac vice*)
jzwerling@zsz.com
SUSAN SALVETTI (pro hac vice)
ssalvetti@zsz.com
ANDREW W. ROBERTSON (*pro hac vice*)
arobertson@zsz.com
ANA M. CABASSA-TORRES (*pro hac vice*)
acabassa@zsz.com
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Christopher Zoidis, Howard Gurwin, Kevin M. Heckman, Jacqueline Peiffer, Virginia A. Durand Trust, Charles L. Sommer and Barbara L. Sommer,<br><br>                    Plaintiffs,<br><br>          v.<br><br>T. Rowe Price Associates, Inc.,<br><br>                    Defendant. | Case No. 16-cv-02289-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. Vince Chhabria<br><br>Date:   August 25, 2016<br>Time:   10:00 a.m.<br>Crtrm:  4<br>           450 Golden Gate Avenue<br>           17th Floor<br>           San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 1

    A. Section 36(b) ............................................................................................................. 1

    B. Nature and Quality of TRP's Investment Advisory Services ....................................... 3

    C. Fees Paid by TRP's Other Clients for Advisory Services ............................................ 3

    D. Economies of Scale Realized by TRP ......................................................................... 4

    E. Board Approval of the Advisory Fees Charged to the Funds ..................................... 4

III. LEGAL ARGUMENT ......................................................................................................... 5

    A. The Applicable Pleading Standard ............................................................................. 5

    B. The Standard of Liability Under § 36(b) ................................................................... 5

    C. The Funds' Fees Are Disproportionately Large to the Services Provided and Are Outside an Arm's-Length Negotiated Range ......................................................... 5

        1. The Subadvised Fund Fee Comparisons Are Appropriate ................................. 8

        2. TRP's Alternative Fee Comparisons Are Inapt .................................................. 9

    D. TRP Realized Economies of Scale and Has Not Appropriately Shared those Benefits with the Funds ............................................................................................. 11

    E. Approval of the Fees By the Board Is Entitled to Little or No Deference ................. 13

    F. Rescission Is Available Pursuant to Section 47(b) ..................................................... 15

    G. Plaintiffs Are Entitled to a Jury Trial ........................................................................ 15

IV. CONCLUSION ................................................................................................................. 15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Am. Chem. & Equip., Inc. 401(k) Ret. Plan v. Principal Mgmt. Corp.*,
   No. 14-cv-00044, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014) .................................. 6, 12, 14

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
   464 F.3d 338 (2d Cir. 2006) ................................................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 5

*Curd ex rel. SEI Int'l Equity Fund v. SEI Inv. Mgmt. Corp.*,
   No. 13-7219, 2015 WL 4243495 (E.D. Pa. July 14, 2015) ................................................... 8, 9

*Curran v. Principal Mgmt. Corp.*,
   No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010) ................................ 8, 10, 14

*Daily Income Fund, Inc. v. Fox*,
   464 U.S. 523 (1984) ............................................................................................................ 2, 15

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
   No. 2:14-cv-414, 2015 WL 965665 (S.D. Ohio Mar. 4, 2015) ......................................... passim

*Hoffman v. UBS-AG*,
   591 F. Supp. 2d 522 (S.D.N.Y. 2008) .................................................................................... 12

*In re Am. Mut. Funds Fee Litig.*,
   No. CV 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) ............................................ 12

*In re BlackRock Mut. Funds Advisory Fee Litig.*,
   No. 14-1165, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ................................................ passim

*In re Davis New York Venture Fund Fee Litig.*,
   No. 14 CV 438, 2015 WL 7301077 (S.D.N.Y. Nov. 18, 2015) ....................................... passim

*In re Franklin Mut. Funds Fee Litig.*,
   478 F. Supp. 2d 677 (D.N.J. 2007) ......................................................................................... 12

*In re Gartenberg*,
   636 F.2d 16 (2d Cir. 1980) ..................................................................................................... 15

*In re Scudder Mut. Funds Fee Litig.*,
   No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ............................... 12

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CA

*Ingenhutt v. State Farm Inv. Mgmt. Corp.*,
 No. 15-cv-01303 (C.D. Ill. June 22, 2016) ................................................................................ 8

*Jones v. Harris Assocs. L.P.*,
 537 F.3d 728 (7th Cir. 2008) .................................................................................................. 10

*Jones v. Harris Assocs. L.P.*,
 559 U.S. 335 (2010) ........................................................................................................ passim

*Jones v. Harris Assocs. L.P.*,
 611 F. App'x 359 (7th Cir. 2015) ............................................................................................. 9

*Kalish v. Franklin Advisers, Inc.*,
 742 F. Supp. 1222 (S.D.N.Y. 1990) ....................................................................................... 12

*Kamen v. Kemper Fin. Servs., Inc.*,
 500 U.S. 90 (1991) ................................................................................................................... 2

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
 No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2002) ..................................... 8, 10, 12, 14

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
 No. 11-1083, 2016 WL 1394347 (D.N.J. Apr. 7, 2016) ........................................................ 10

*Kennis v. Metropolitan West Asset Mgmt., LLC*,
 No. 15-CV-8162 (C.D. Cal. April 25, 2016) ............................................................. 7, 8, 10, 14

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
 77 F. Supp. 2d 559 (D.N.J. 1999) ........................................................................................... 14

*The Lynn M. Kennis Trust v. First Eagle Inv. Mgmt., LLC*,
 No. 14-585-SLR-SRF, 2015 WL 5886178 (D. Del. Oct. 8, 2015) ............................... 5, 8, 9, 14

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
 248 F.3d 321 (4th Cir. 2001) ............................................................................................ 11, 14

*Pereira v. Farace*,
 413 F.3d 330 (2d Cir. 2005) ................................................................................................... 15

*Redus-Tarchis v. New York Life Inv. Mgmt. LLC*,
 No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015) ............................................... 8, 9, 12

*Reso v. Artisan Partners Ltd., P'ship*,
 No. 11-CV-873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) ............................................ 14

*Strigliabotti v. Franklin Res., Inc.*,
 No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) .............................................. 5

*Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*,
 No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015) ...................................... 5, 9, 12, 14

*Zehrer v. Harbor Capital Advisors, Inc.*,
   No. 14 C 789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014) .......................................... 8, 9, 12, 15

**STATUTES**

15 U.S.C. § 80a-35(b) ................................................................................................................... 2

Fed. R. Civ. P. 8 ............................................................................................................................ 1

Investment Company Act of 1940 § 36(b) ............................................................................ passim

Investment Company Act of 1940 § 47(b) ................................................................................. 15

**OTHER AUTHORITIES**

Also available at http://www.sechistorical.org/museum/galleries/tbi/gogo_c.php ............................. 2

S. REP. NO. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897 ........................................... 2

STUDY OF MUTUAL FUNDS, H.R. REP. NO. 87-2274, at 28-30 (1962) ................................. 2

U.S. SECURITIES AND EXCHANGE COMMISSION, DIVISION OF INVESTMENT
   MANAGEMENT: REPORT ON MUTUAL FUND FEES AND EXPENSES (Dec. 2000),
   *available at* http://www.sec.gov/news/studies/feestudy.htm ..................................................... 12

## I. INTRODUCTION

The investment advisory fees T. Rowe Price Associates, Inc. ("TRP") charges its captive Funds[1] epitomize the conflicts of interest and abuse that led Congress to enact § 36(b) of the Investment Company Act of 1940 (the "ICA"). Unconstrained by competition, TRP charges the Funds advisory fees that are as much as 73% higher than the fees negotiated at arm's length by other, independent mutual funds (the "Subadvised Funds") for investment advisory services. As the Funds have grown, TRP has captured for itself the benefits of economies of scale in the form of higher fees and profits, without appropriately sharing those benefits with the Funds. The Funds' Board of Trustees (the "Board") has not served as an effective check on the fees charged.

The circumstances pertaining to the advisory fees charged to the Funds fall within the standard of liability under § 36(b) established by the Supreme Court in *Jones v. Harris Assocs. L.P.*, 559 U.S. 335 (2010). The large disparity between fees charged to the Funds and the Subadvised Funds supports a plausible inference that the fees charged to the Funds are disproportionate to the services provided and outside the range of what could be negotiated at arm's length. Every district court that has recently considered similar allegations has found them to satisfy the pleading standard under Fed. R. Civ. P. 8(a).

TRP asks the court to ignore the pleaded comparisons and instead points to fees charged by other investment advisers to their captive mutual funds. However, *Jones* cautions against exactly those types of comparisons, and holds that the arm's-length range of fees such as those charged to the Subadvised Funds is the benchmark for evaluating challenged fees. TRP's remaining arguments compel detail not required for notice pleading and raise fact issues that cannot be the basis for a motion to dismiss. TRP would require Plaintiffs to *prove* their claims rather than *plead* them.

## II. BACKGROUND

### A. Section 36(b)

The ICA regulates investment companies, including mutual funds. Typically, a mutual fund

---

[1] The Funds are the: (i) T. Rowe Price Blue Chip Growth Fund; (ii) T. Rowe Price Capital Appreciation Fund; (iii) T. Rowe Price Equity Fund; (iv) T. Rowe Price Growth Stock Fund; (v) T. Rowe Price International Stock Fund; (vi) T. Rowe Price High Yield Fund; (vii) T. Rowe Price New Income Fund; and (viii) T. Rowe Price Small Cap Stock Fund.

is created by an investment adviser, an entity separate from the fund. *See Jones*, 559 U.S. at 338. "The adviser selects the fund's directors, manages the fund's investments, and provides other services." *Id*. Therefore, a mutual fund is often referred to as "captive" of its adviser. *Id*. at 349. Recognizing the potential conflicts of interest, and concerned about the "potential for abuse," Congress enacted protections for mutual fund shareholders in the ICA. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536-38 (1984) (quotation marks and citations omitted). Congress amended the ICA in 1970 to provide additional protections to shareholders. Among other amendments, Congress added a new § 36(b):

> [T]he investment adviser of a [mutual fund] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by [the mutual fund], or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.

15 U.S.C. § 80a-35(b).

Section 36(b) reflects Congress's findings that "forces of arms-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy." S. REP. NO. 91-184, at 4 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4901. "[I]nvestment advisers often charged mutual funds higher fees than those charged the advisers' other clients," *Daily Income Fund*, 464 U.S. at 537 (*citing* A STUDY OF MUTUAL FUNDS, H.R. REP. NO. 87-2274, at 28-30 (1962) ("Wharton Report"[2])) due to the "principal reason" that "competitive factors which tend to influence rates charged other clients have not been substantially operative in fixing the advisory fee rates paid by mutual funds." Wharton Report at 493-94.

Section 36(b) also reflects Congress's intent to ensure that investors "share equitably . . . in the economies available as a result of the growth and general acceptance of mutual funds." S. REP. NO. 91-184, at 6 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4901. And it reflects Congress's conclusion that "shareholders should not have to rely solely on the fund's directors to assure reasonable adviser fees." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991) (quotation marks and citation omitted). Section 36(b) is a "mechanism by which the fairness of" the investment advisory fees "could be tested in court." S. REP. NO. 91-184, at 5 (1969), *reprinted in*

---

[2]  Also available at http://www.sechistorical.org/museum/galleries/tbi/gogo_c.php.

1970 U.S.C.C.A.N. 4897, 4901.

### B.   Nature and Quality of TRP's Investment Advisory Services

TRP serves as investment adviser to the Funds pursuant to substantially identical Investment Management Agreements between TRP and each of the Funds (the "IMAs"). ¶¶ 34-42.[3]  The IMAs require TRP to provide investment management services, including: (a) "supervis[ing] and direct[ing] the investments of" each Fund in accordance with each Fund's investment objective, program, and restrictions, as provided in its prospectus; (b) "formulat[ing] and implement[ing] a continuing program" for each Fund; (c) determining which securities and other investments will be purchased, retained, or sold by each Fund; (d) placing orders for purchase and sale on behalf of each fund; and (e) making certain reports and maintain certain books and records relating to the investment management services it provides to each Fund.  ¶¶ 43-44.  Each Fund pays TRP an annual fee that consists of two components: (a) a group fee and (b) an individual fund fee.  ¶ 72.  The group fee is calculated on the combined assets under management ("AUM") of all T. Rowe Price Funds, with the same fee applying to each Fund; the individual fee is calculated for each Fund as a percentage of that Fund's AUM.  ¶¶ 73-74, 76.  As of December 31, 2015, the group fee rate was 0.29% of the T. Rowe Price Funds' AUM, and the individual fee rates varied from 0.15% to 0.35% of each Fund's AUM .  ¶¶ 75, 77-78.  The Funds paid TRP more than $1 billion in total management fees, after waivers and reimbursements, in 2015.  ¶ 78.

### C.   Fees Paid by TRP's Other Clients for Advisory Services

TRP also provides investment management services to other mutual funds, independent of TRP, such as the Subadvised Funds.  ¶¶ 79-81.  The investment management services provided to the Subadvised Funds are the same or substantially the same as the services TRP provides to the Funds.  ¶ 88.  For example, like the IMA of each Fund, the subadvisory agreement for JNL Subadvised Growth Fund requires TRP to: (a) "make investment decisions for all assets of" the JNL Subadvised Growth Fund; (b) "furnish an investment program" for the fund; (c) place orders for the purchase and sale of securities; and (d) make reports and maintain books and records relating to its

---

[3]  All ¶ references are to the Complaint (Dkt. No. 1).

provision of investment management services. *Compare* ¶¶ 89-90 *with* ¶¶ 43-44.

The same portfolio managers and other investment professionals who manage the Funds also manage their corresponding Subadvised Funds. ¶¶ 92, 95, 98, 101, 104, 107, 110, 113. For both, TRP employs: (a) the same or substantially the same investment objective and strategies and invests in the same or substantially the same types of securities (¶¶ 91, 94, 97, 100, 103, 106, 109, 112); (b) the same or substantially the same investment strategies, research and analysis, and systems, technology, and other resources in providing investment management services (¶¶ 93, 96, 99, 102, 105, 108, 111, 114, 116); (c) the same or substantially the same legal, compliance, and administrative personnel to ensure that TRP's investment management services comply with applicable laws and to maintain books and records (¶ 116). However, the fees that TRP receives for providing investment management services to the Subadvised Funds are significantly lower than the fees paid by the Funds for the same or substantially the same services, resulting in the Funds paying up to $393.1 million annually in excessive fees. ¶¶ 117, 119, 121, 123, 125, 127, 129, 131, 133.

### D. Economies of Scale Realized by TRP

While the assets of the Funds have increased dramatically, TRP has benefitted from economies of scale not shared with the Funds. ¶¶ 147-162. From 2008 to 2015, the AUM of the Funds increased from less than $64.5 billion to more than $175 billion while investment management fees increased by more than 167%, from approximately $378.2 million to more than $1 billion. ¶¶ 147-162. This dramatic increase in fees was not accompanied by a proportionate increase in the work or cost required to provide investment management services to the Funds. ¶ 164. TRP realized economies of scale and TRP failed to adequately share the benefits of economies of scale with the Funds. ¶¶ 163, 165-226.

### E. Board Approval of the Advisory Fees Charged to the Funds

Each year, the Board has passively accepted TRP's rationalization for the fees charged and has not appropriately examined, among other things, the disparity between fees charged to the Funds and to the Subadvised Funds or any purported justification for such disparity. ¶¶ 232-240.

McKool Smith Hennigan, P.C.
Los Angeles, CA

## III. LEGAL ARGUMENT

### A. The Applicable Pleading Standard

TRP imposes a heightened pleading requirement—a "stringent" and "exacting" standard (Def. Br. at 5)—but "Rule 8's liberal pleading standard" governs the sufficiency of a § 36(b) claim. *See Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI, 2005 WL 645529, at *4 (N.D. Cal. Mar. 7, 2005); *see also The Lynn M. Kennis Trust v. First Eagle Inv. Mgmt., LLC*, No. 14-585-SLR-SRF, 2015 WL 5886178, at *4 (D. Del. Oct. 8, 2015) ("*First Eagle*"). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It "do[es] not require heightened fact pleading of specifics…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff must show success on the merits is more than a "sheer possibility," it is not a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The Standard of Liability Under § 36(b)

"[T]o face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*, No. 13-15742, 2015 WL 5692324, at *1 (9th Cir. Sept. 29, 2015) (citing *Jones*, 559 U.S. at 346). Plaintiffs "may state a § 36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee." *In re BlackRock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *4 (D.N.J. Mar. 27, 2015) (citation omitted). The Supreme Court held that courts considering claims under § 36(b) must "use[] the range of fees that might result from arm's-length bargaining as the benchmark for reviewing challenged fees." *Jones*, 559 U.S. at 347. The Court explained that fees paid by the adviser-defendant's other clients should be given "the weight that they merit in light of the similarities and differences between the services that the clients in question require. . . ." *Id.* at 350.

### C. The Funds' Fees Are Disproportionately Large to the Services Provided and Are Outside an Arm's-Length Negotiated Range

Consistent with *Jones*, Plaintiffs allege: (1) a large disparity between the investment advisory

McKool Smith Hennigan, P.C.
Los Angeles, CA

fees charged to the Fund by TRP and the investment advisory fees charged to the Subadvised Funds by TRP; (2) the disparity cannot be justified by any purported differences in services; and (3) the fees charged to the Subadvised Funds were the result of arm's-length negotiations.

*Large Fee Disparity*. TRP is wrong that the Complaint "avers no facts from which to discern any bargaining range for the Funds' advisory fees." (Def. Br. at 7); the Complaint clearly identifies the fees charged to the Subadvised Funds as the appropriate arm's-length negotiated fee rate for comparison. ¶¶ 117-133. The fees charged to the Funds are as much as 73% higher than the fee rates to the Subadvised Funds (¶ 5), resulting in the Funds paying as much as $388 million more in fees per year than they would pay pursuant to the fee rates charged to the Subadvised Funds (¶ 6).

*Similar Services*. "At the heart of a 36(b) claim is the relationship between the fees charged to the fund and the services rendered to the fund." *Am. Chem. & Equip., Inc. 401(k) Ret. Plan v. Principal Mgmt. Corp.*, No. 14-cv-00044, 2014 WL 5426908, at *5 (S.D. Iowa Sept. 10, 2014). Because TRP provides the same or substantially the same services to the Funds and the Subadvised Funds, there is no justification for charging disproportionately higher fees. *Compare* ¶ 43 *with* ¶89.

The disclosures in the prospectuses of the Funds and the Subadvised Funds show that the services are substantively identical. TRP employs substantially the same investment strategies and invests in substantially the same types of securities for both the Funds and their respective Subadvised Funds. ¶¶ 91, 94, 97, 100, 103, 106, 109, 112. The same portfolio managers and other investment professionals are involved in providing investment advisory services to each Fund and the Subadvised Fund(s) and use the same research and analysis, systems, technology, and other resources. *See generally* ¶¶ 92-114. The same laws and regulations also govern TRP's provision of investment advisory services to both sets of funds, *see* ¶ 115.

Assessing strikingly similar allegations, one court explained:

> Plaintiffs have pled a notable disparity in the fees obtained for servicing the three funds with which they are involved and the subadvised funds, while concurrently pleading that the services provided to and resources involved in all of the funds are substantially the same. This latter point is important because it is the work done and not the label given to the work that will likely and ultimately prove dispositive of Plaintiffs' claims. The prospectus disclosures and involvement by the same portfolio managers and investment professionals support the similarity allegations.

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, No. 2:14-cv-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015); *see also In re Davis New York Venture Fund Fee Litig.,* No. 14 CV 438, 2015 WL 7301077, at *5 (S.D.N.Y. Nov. 18, 2015); *In re BlackRock*, 2015 WL 1418848, at *5.

The higher fees paid by each Fund are not justified by any additional services provided by TRP. ¶ 134. In addition to investment management services, the IMAs require TRP to provide certain administrative services. ¶ 135. The same or substantially the same administrative services could be obtained from unaffiliated providers through arm's-length negotiations for less than 0.05% of AUM. Insofar as the higher fee rate charged to the Funds is for administrative services, TRP charges the Funds between 2.6 and 6 times the arm's-length fee rate for the same or substantially the same administrative services. ¶ 138.[4]

*Subadvised Fund Fees*. TRP does not contest that the fees charged by TRP to the Subadvised Funds were the result of arm's-length negotiations. Thus, the substantially lower fees charged by TRP to the Subadvised Funds provide the range of investment advisory fees that could be negotiated at arm's length. *See Jones*, 559 U.S. at 349. That the Funds pays as much as 73% higher fee rates for advisory services than the Subadvised Funds pay for the same or substantially the same services supports the inference that the Funds' fees are disproportionately large and outside the range of what could be negotiated at arm's length. *See Jones*, 559 U.S. at 350 & n.8.

Every district court that has recently addressed similar allegations agrees. *See Kennis v. Metropolitan West Asset Mgmt., LLC*, No. 15-CV-8162, slip op. at 7-8 (C.D. Cal. April 25, 2016) ("*Kennis I*") (holding allegations of disparity in fees charged to funds and subadvised funds "combined with allegations that the Fund and Sub-Advised Funds receive substantially similar services, are sufficient to raise a plausible inference that TRP's fee may be so disproportionately large as to be outside the range of arm's length bargaining");[5] *see also In re Davis,* 2015 WL

---

[4] Further, the Funds pay additional fees and expenses, separate from the investment management fee charged by TRP, for certain of the administrative services purportedly provided under the IMAs. ¶¶ 139-141.

[5] The court in *Kennis* issued two tentative orders denying defendant's motion to dismiss and adopted the second tentative as the final order. *See Kennis v. Metropolitan West Asset Mgmt., LLC*, No. 15-CV-8162 (C.D. Cal. June 16, 2016) ("*Kennis II*"). Because the final order incorporates rulings from the first tentative order, both orders are attached as Exhibits A and B to the Declaration

7

Case No. 16-cv-02289-VC          PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

7301077, at *5; *First Eagle*, 2015 WL 5886178, at *5; *In re BlackRock*, 2015 WL 1418848, at *6; *Goodman*, 2015 WL 965665, at *5.[6] TRP simply ignores these decisions and relies instead on inapposite cases founded upon different allegations.[7]

### 1.  The Subadvised Fund Fee Comparisons Are Appropriate

TRP derides the Subadvised Fund fee comparisons as "inapt" because the Funds pay what is called an "advisory fee," and the Subadvised Funds pay what is called a "subadvisory fee." But this is a distinction without a difference. "[I]t is the work done and not the label given to the work that will likely and ultimately prove dispositive of Plaintiffs' claims." *Goodman*, 2015 WL 965665 at *5.

Every district court that has addressed the same argument has rejected it. *See In re BlackRock*, 2015 WL 1418848, at *5 ("This argument, however, misses the mark . . . Plaintiffs' fee comparison is appropriate, as they have alleged that BRIM, in its capacity as a sub-adviser to the Sub-Advised Funds, provides the same or substantially the same investment advisory services as all the Defendants provide to the Funds."); *Kennis I*, slip op. at 7 ("The Court need not determine whether the advisory fees charged by other mutual funds in the industry are a more relevant comparison at this stage."); *see also In re Davis*, 2015 WL 7301077, at *5; *First Eagle*, 2015 WL 5886178, at *6.

TRP argues that it only provides a "fraction" of the services to the Subadvised Funds that it provides to the Funds. However, the terms of the relevant agreements require TRP to provide the same or substantially the same services to both. TRP's arguments that it has a more limited role

---

of Andrew W. Robertson (the "Robertson Decl."). Counsel for TRP also represented the defendant in *Kennis* and raised virtually the same arguments in support of dismissal.

[6] *See also Curd ex rel. SEI Int'l Equity Fund v. SEI Inv. Mgmt. Corp.*, No. 13-7219, 2015 WL 4243495, at *5 (E.D. Pa. July 14, 2015); *Redus-Tarchis v. New York Life Inv. Mgmt. LLC*, No. 14-7991, 2015 WL 6525894, at *6 (D.N.J. Oct. 28, 2015); *Zehrer v. Harbor Capital Advisors, Inc.*, No. 14 C 789, 2014 WL 6478054, *2 (N.D. Ill. Nov. 18, 2014); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083, 2012 WL 6568409, at *3 (D.N.J. Dec. 17, 2002) ("*Kasilag I*"); *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2010 WL 2889752, at *9 (S.D. Iowa June 8, 2010).

[7] *Cf. Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 15-cv-01303, slip op. (C.D. Ill. June 22, 2016) (Roy Decl. Ex. I) (dismissing claim where "Plaintiffs have not presented a sufficient foundation to find that [comparable mutual funds] are similar enough to be comparable…[n]or is there any effort to compare the services being provided by [defendant] to those being provided by the chosen comparators").

when serving as a subadviser or bears greater "risks" (Def. Br. at 10-11), raise "evidence-dependent contention[s] that cannot be afforded dispositive force in today's motion-to-dismiss context." *Goodman*, 2015 WL 965665, at *5; *see also In re Davis*, 2015 WL 7301077, at *5; *Redus-Tarchis*, 2015 WL 6525894, at *7; *First Eagle*, 2015 WL 5886178, at *5; *In re BlackRock*, 2015 WL 1418848, at *5; *Curd*, 2015 WL 4243495, at *5; *Zehrer*, 2014 WL 6478054, at *4.

Even assuming TRP provides additional services to the Funds not provided to the Subadvised Funds, those services are either provided pursuant to separate fees and expenses (¶¶ 139-146), or do not justify the more than $338 million in annual fees paid by the Funds in addition to investment advisory fees (¶¶ 134-138). *See, e.g., In re BlackRock*, 2015 WL 1418848, at *5 n.5 ("Even if the Court were to assume that BRA [BlackRock] provided additional services under the IMA, the Court would also have to assume that the fee retained by BRA was proportionate to the services it performed."). TRP's reliance on *Turner* is misplaced. *Turner* did not consider comparisons to fees charged to unaffiliated, subadvised mutual funds. Rather, the *Turner* plaintiff compared the performance of his fund to the performance of an index fund and compared the fund's fees to the fees charged by other advisers to "other mutual funds, but he fails to allege that these other funds' advisers provided the same services or pursued a similar investment strategy." *Turner*, 2015 WL 5692324, at *2. The Ninth Circuit rejected both comparisons because there were no allegations that the investment strategies, or the services provided, were comparable. *Id.*[8]

### 2. TRP's Alternative Fee Comparisons Are Inapt

TRP advocates dismissal because the total management fees paid by the Funds to TRP are less than the total management fees paid by some of the Subadvised Funds. (Def. Br. at 8-10.) The comparison fails. The fees charged by other advisers to their captive mutual funds is exactly the type of comparison that the Supreme Court cautioned against because such fees may not be

---

[8] TRP's reliance on the Seventh Circuit's decision in *Jones*, on remand, is similarly misplaced. The Seventh Circuit dismissed the plaintiffs' claims on summary judgment not a motion to dismiss. Further, the plaintiffs in *Jones* compared the fees charged by defendant to its captive mutual funds to fees paid by pension funds and other non-mutual fund clients. The Seventh Circuit found such comparisons lacking because the "Plaintiffs have not proffered evidence that would tend to show that Harris provided pension funds (and other non-public clients) with the same sort of services that it provided to the Oakmark funds, or that it incurred the same costs when serving different types of clients." *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 361 (7th Cir. 2015).

negotiated at arm's-length and may themselves violate § 36(b). *See Jones*, 559 U.S. at 350-51; *see also Kasilag I*, 2012 WL 6568409, at *3; *Curran*, 2010 WL 2889752, at *9. As Judge Posner explained in a dissenting opinion cited favorably by the Supreme Court in *Jones*: "The governance structure that enables mutual fund advisers to charge exorbitant fees is industry-wide, so [comparisons to fees charged to other mutual funds] would if widely followed, allow those fees to become the industry's floor." *Jones v. Harris Assocs. L.P.*, 537 F.3d 728, 732 (7th Cir. 2008).

There is no basis to infer that the additional fees charged to the Subadvised Funds by their adviser-sponsors represent reasonable compensation for additional services. Courts have examined the allocation of responsibility between the adviser-sponsors and subadvisers of mutual funds, and have found sufficient facts to infer that adviser-sponsors do *not* provide services sufficient to justify significant additional fees. *See, e.g., Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083, 2016 WL 1394347, at *16 (D.N.J. Apr. 7, 2016) (denying defendants' motion for summary judgment and finding that "the dispute concerning the actual services performed by the [investment adviser] Defendants and the quality of those services remains genuine").

Even assuming the adviser-sponsors provide additional services to the Subadvised Funds, there is no basis to infer that TRP provides comparable services to the Funds. For example, TRP cites the "hiring and oversight of sub-advisers" as one example of the additional services provided by the advisers to the Subadvised Funds. (*See* Def. Br. at 10.) But, TRP has no such responsibilities here since the Funds have no subadvisers. Moreover, whether the services provided to the Funds and Subadvised Funds are substantially the same and whether a comparison to other mutual fund fees is more appropriate, "are both fact-intensive inquiries that cannot be resolved at this stage in the litigation." *Kennis II,* slip op. at 3; *see also In re Davis*, 2015 WL 7301077, at *5; *In re BlackRock*, 2015 WL 1418848, at *5.[9]

---

[9] TRP's argument pertaining to "SEC-mandated" fee disclosures (Def. Br. at 1), is irrelevant. Plaintiffs' claims under Section 36(b) are based on TRP violating its fiduciary duty by charging excessive fees. They are not based on any particular disclosure or non-disclosure of the Funds' fee structure, or compliance with SEC requirements. *See Kennis II*, slip op. at 4 (finding same argument "meritless"). Also irrelevant is TRP's argument that § 36(b) does not require "fee parity" (Def. Br. at 11 n.8), because there are no such allegations in the Complaint.

McKool Smith Hennigan, P.C.
Los Angeles, CA

**D.   TRP Realized Economies of Scale and Has Not Appropriately Shared those Benefits with the Funds**

"Section 36(b) was enacted in large part because Congress recognized that as mutual funds grew larger, it became less expensive for investment advisers to provide the additional services. Congress wanted to ensure that investment advisers passed on to fund investors the savings that they realized from these economies of scale." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326-27 (4th Cir. 2001).

TRP's assertion that "plaintiffs do not allege that TRP failed to share potential economies of scale" (Def. Br. at 13) ignores the Complaint specifically addressing such failures. *See* ¶¶ 165-227. Plaintiffs have plausibly alleged that (i) each Fund's AUM grew and remained substantially above historic assets levels, resulting in significant increases in the advisory fees charged by TRP (¶¶ 147-162); (ii) the increase in the Funds' AUM and advisory fees was not accompanied by a proportionate increase in the nature and quality of the services provided by TRP or the effort required to perform those services (¶¶ 163-164); **and** (iii) the Funds' fee rates were not adequately adjusted to reflect the economies of scale realized by TRP (¶¶ 168-226).

Although the fee schedule used to calculate the Funds' group fee component includes breakpoints, the combined AUM of the T. Rowe Price Funds has exceeded, and remained above, the final breakpoint since 2012. ¶¶ 168-172. And, even during the years when AUM was below the final breakpoint, the breakpoints in the group fee schedule are spaced too far apart and the reductions too small to appropriately share the benefits of economies of scale with the Funds, resulting in a negligible impact on the effective group fee rate. ¶¶ 173-178.[10]

As to the individual fee schedules, half of the Funds have no breakpoints, and thus, no allowance to appropriately benefit from economies of scale as AUM increases. ¶¶ 179-197. The remaining Funds' individual fee schedules have a single breakpoint, but it is set too high, such that the benefits of economies of scale below that threshold are not appropriately shared. ¶¶ 198-199,

---

[10] While TRP touts the Board's approval of an additional breakpoint when the Funds' AUM surpasses $500 billion (Def. Br. at 13), the combined AUM of the Funds were approximately $763 billion as of December 31, 2015, surpassing the "newly added" breakpoint by $263 billion. As a result, TRP has failed to appropriately share the benefits of economies of scale as the combined AUM of the Funds increased from $500 billion to $763 billion. *See* ¶¶ 169-172.

McKool Smith Hennigan, P.C.
Los Angeles, CA

220. Moreover, those Funds have long surpassed the lone breakpoint and, by not instituting additional breakpoints, TRP likewise has failed to appropriately share the benefits of economies of scale. ¶¶ 200-219; 223-226.

Numerous courts assessing substantially similar allegations have found them sufficient to support a § 36(b) claim. *See Redus-Tarchis,* 2015 WL 6525894, at *10 (allegations that "breakpoints are spaced inappropriately and result in negligible reductions in overall management fee rates" are "sufficient to withstand a motion to dismiss"); *In re BlackRock*, 2015 WL 1418848, at *7 ("such allegations allow for an inference that the adviser's 'breakpoints did not give shareholders meaningful benefits from the economies of scale enjoyed by the Funds'"); *Kasilag I*, 2012 WL 6568409, at *6 ("Plaintiffs have sufficiently alleged that [the adviser-defendant's] breakpoints did not give shareholders meaningful benefits from the economies of scale enjoyed by the Funds."); *Am. Chem.*, 2014 WL 5426908, at *7 (allegation that while fund's "assets have grown, this value increase comes with little additional work for Defendants" sufficient at the motion to dismiss stage); *Zehrer,* 2014 WL 6478054, at *4 (allegation that "Harbor Capital received 'economies of scale' benefits as the Fund grew that were not passed on to the Fund" is sufficient).[11]  None of the authority cited by TRP warrants a different result.  In *Turner*, the Ninth Circuit not only found the allegations with respect to the "substance of the advisory fee" lacking, but also that the allegations relating to economies of scale alone could not "save [plaintiff's] claim from dismissal." 2015 WL 5692324, at *2.  The factual allegations and/or procedural postures in TRP's other cases are not remotely analogous to those here.[12]

---

[11] Ultimately, to *prove* the economies of scale realized by TRP will require certain financial information, such as TRP's internal costs, which must be obtained in discovery.  Indeed, such data are not readily available even to the SEC, much less to fund shareholders. *See* U.S. SECURITIES AND EXCHANGE COMMISSION, DIVISION OF INVESTMENT MANAGEMENT: REPORT ON MUTUAL FUND FEES AND EXPENSES (Dec. 2000), *available at* http://www.sec.gov/news/studies/feestudy.htm.

[12] *See Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008) (plaintiffs "offer[ed] no allegations about the actual services provided by the funds"); *In re Scudder Mut. Funds Fee Litig.,* No. 04 Civ. 1921 (DAB), 2007 WL 2325862, at *17 (S.D.N.Y. Aug. 14, 2007) (plaintiffs failed to allege that fees were excessive, or disproportionate to the services rendered, and alleged economies of scale related to funds in which no named plaintiffs had invested or to time periods far outside the statute of limitations); *In re Franklin Mut. Funds Fee Litig.,* 478 F. Supp. 2d 677 (D.N.J. 2007) (plaintiffs failed to allege that fees were excessive in relation to services provided). *Kalish v. Franklin Advisers, Inc.,* 742 F. Supp. 1222 (S.D.N.Y. 1990) and *In re Am. Mut. Funds Fee Litig.*,

"Plaintiffs need not establish that [Defendant] failed to pass along economies of scale at this stage of the proceedings; rather, Plaintiffs need to allege sufficient factual content to draw a reasonable inference that [Defendant] failed to do so." *In re BlackRock*, 2015 WL 1418848, at *7. Plaintiffs have met their burden.

### E. Approval of the Fees By the Board Is Entitled to Little or No Deference

The Court in *Jones* held that "a measure of deference to a board's judgment may be appropriate in some instances," but "the appropriate measure of deference varies depending on the circumstances." *Jones*, 559 U.S. at 349.

> [W]here the board's process was deficient or the adviser withheld important information, the court must take a more rigorous look at the outcome. When an investment adviser fails to disclose material information to the board, greater scrutiny is justified because the withheld information might have hampered the board's ability to function as an independent check upon the management.

*Id.* at 351-52 (quotation marks and citation omitted).

The Complaint alleges that the board approval process was "deficient," not "robust," and, therefore, the Funds' fees should be subject to "greater scrutiny" under *Jones*. The process was neither competitive nor conducted at arm's length, in contrast to the process by which the adviser-sponsors of the Subadvised Funds select investment subadvisers. For example, whereas the adviser-sponsors of the Subadvised Funds solicited proposals from multiple candidates and negotiated with the candidates regarding fees (¶¶ 241-244), the Board has not solicited proposals from other investment advisers to provide investment advisory services to the Funds (¶ 237) or negotiated a "most favored nation" provision into the IMAs, to enable the Funds to benefit from fees negotiated at arm's length even if the Board did not engage in such negotiations with TRP. ¶238.

Moreover, the Board, *inter alia*: (i) relied on information and analyses that TRP prepared or was designed to support TRP's rationalization for the fees; (ii) did not consider information or analyses reflecting the interests of the Funds when assessing the investment advisory fees or TRP's rationalization for them; (iii) approved the IMAs charging investment advisory fees as much as 73% higher than other mutual fund clients pay for the same or substantially the same services; (iv)

---

No. CV 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) were post-trial decisions and therefore offer little guidance on *pleading* a § 36(b) claim.

accepted TRP's representations that the lower fees paid by other clients reflect differences in the services provided without appropriately examining whether the services actually are different and without considering information necessary to assess whether the difference in fees is warranted by any purported differences in the services; and (v) did not devote adequate time to its consideration of the Fund's advisory contracts. ¶¶ 5, 229, 232-235.

Numerous courts have found substantially similar allegations sufficient at the pleading stage. *See, e.g., Kennis I*, slip op. at 10-11; *In re Davis*, 2015 WL 7301077, at *3; *First Eagle*, 2015 WL 5886178, at *8-9; *Goodman*, 2015 WL 965665, at *3, *5; *In re BlackRock*, 2015 WL 1418848, at *7. *Goodman* explained that allegations of "a flawed negotiation or oversight process would inform the amount of deference given to the board's approval and consideration of all of the relevant factors that will decide the merits of the claims involved." 2015 WL 965665, at *5.[13] The issue is not whether allegations relating to board approval process alone could support a plausible claim. *Id*.

The self-serving recitations included in the Funds' public filings regarding the Board approval process (Def. Br. at 5, 14), at most, create a factual dispute. *See Curran*, 2010 WL 2889752, at *9 (rejecting invitation to review public disclosures of the steps taken by the board in setting fees on motion to dismiss); *see also In re Blackrock*, 2015 WL 1418848, at *7; *Reso v. Artisan Partners Ltd., P'ship,* No. 11-CV-873, 2011 WL 5826034, at *6 (E.D. Wis. Nov. 18, 2011).

Any reliance on *Turner* is misplaced. That plaintiff "affirmatively allege[d] that the Fund's board of directors had available to it the 'data necessary to determine whether' the advisory fees and 12b–1 fees charged were appropriate." 2015 WL 5692324, at *2. Based on that concession, the Ninth Circuit deferred to the board's bargaining process finding additional allegations regarding the board process "irrelevant in light of [plaintiff's] concession that DSA provided the board with the relevant information." *Id*. Plaintiffs make no concession here and allege that the Board did *not* have the information necessary to make an informed decision. *See* ¶¶ 232-235.[14]

---

[13] *See also Kasilag I*, 2012 WL 6568409, at *7; *Am. Chem.,* 2014 WL 5426908, at *7.

[14] TRP's other citations are easily distinguished. Unlike in those cases, Plaintiffs do not allege that either a deficient board approval process or the service on multiple boards, standing alone, pleads a violation of § 36(b). *See Migdal*, 248 F.3d at 328. *See Krantz v. Prudential Inv. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 563 (D.N.J. 1999); *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006).

McKool Smith Hennigan, P.C.
Los Angeles, CA

Consistent with Congress's intent "not to rely solely on the fund's directors to assure reasonable adviser fees" and to establish § 36(b) as an "independent check[] on excessive fees," *Daily Income Fund*, 464 U.S. at 540-41, a "robust" process will not by itself insulate the adviser from liability for excessive fees. *See Jones*, 559 U.S. at 351. Thus, Plaintiffs state a claim under § 36(b) based on allegations that TRP charges disproportionately higher fees to the Fund than to the Subadvised Funds for the same or substantially the same services whether or not the approval process was "robust." *See Jones*, 559 U.S. at 351 ("a fee may be excessive even if it was negotiated by a board in possession of all relevant information").

### F. Rescission Is Available Pursuant to Section 47(b)

Plaintiffs do not contend that § 47(b) of the ICA provides a "separate basis for a claim." (Def. Br. at 15.) Plaintiffs seek rescission for TRP's § 36(b) violation. Thus, once the § 36(b) claim is sustained, § 47(b) provides recessionary relief to the Funds. Similar efforts to defeat requests for rescission under § 47(b) at the pleading stage have recently failed. *See Zehrer*, 2014 WL 6478054, at *4; *Goodman*, 2015 WL 965665, at *6.

### G. Plaintiffs Are Entitled to a Jury Trial

TRP's request to strike Plaintiffs' demand for a jury trial is premature. *See Goodman*, 2015 WL 965665, at *6 n.1 (holding that request to strike jury demand on § 36(b) claim "falls outside today's Rule 12(b)(6) inquiry."). In any event, Plaintiffs seek "compensatory" damages including lost investment returns and interest. *See* Compl. at 83. As such, Plaintiffs are entitled to a jury trial. *See, e.g., Pereira v. Farace*, 413 F.3d 330, 340-41 (2d Cir. 2005) (holding that "defendants were entitled to a jury trial on the [plaintiff's] breach of fiduciary duty claims" where the claims were for "compensatory damages—a legal claim").[15]

## IV. Conclusion

Plaintiffs request that the Court deny TRP's motion to dismiss.

Dated: July 22, 2016                               McKool Smith Hennigan, P.C.
                                                   By */s/J. Michael Hennigan*
                                                   Attorneys for Plaintiffs

---

[15] The cases cited by TRP do not address claims for damages that include lost investment returns and interest. *See, e.g., In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980) ("We leave for another day a determination as to the right to a jury trial of a plaintiff making a bona fide claim for damages.").

15
Case No. 16-cv-02289-VC           PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS