Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

John D. Donovan (*admitted pro hac vice*)
*john.donovan@ropesgray.com*
Robert A. Skinner (*admitted pro hac vice*)
*robert.skinner@ropesgray.com*
Amy D. Roy (*admitted pro hac vice*)
*amy.roy@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

Attorneys for Defendant
*T. ROWE PRICE ASSOCIATES, INC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHRISTOPHER ZOIDIS, et al., | Case No. 16-cv-02289-VC |
| Plaintiffs, | **DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| v. | |
| T. ROWE PRICE ASSOCIATES, INC., | Date: August 25, 2016 |
| Defendant. | Time: 10:00 a.m. |

1

2

## **TABLE OF CONTENTS**

3

I.    THE PLAINTIFFS' FEE COMPARISON TO SUB-ADVISORY FUNDS DOES NOT MAKE OUT A VIABLE CLAIM UNDER SECTION 36(b) ............................................... 2

II.   THE PLAINTIFFS' SPECULATION ABOUT "ECONOMIES OF SCALE" DOES NOT STATE A CLAIM ........................................................................................................... 8

III.  THE PLAINTIFFS' CIRCULAR ALLEGATIONS OF A "DEFICIENT" BOARD DO NOT UNDERMINE THE STATUTORY MANDATE TO DEFER TO THE INDEPENDENT DIRECTORS' DECISION-MAKING ................................................... 10

CONCLUSION ..................................................................................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**Case No. 16-cv-02289-VC**

i

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 3

6

7

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
  694 F.2d 923 (2d Cir. 1982) ..................................................................................... 8

8

9

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
  No. 2:14-cv-414; 2:15-cv-2923, 2016 WL 759654 (S.D. Ohio Feb. 26, 2016) ..................... 10

10

*In re Am. Mut. Funds Fee Litig.*,
  No. CV-04-5593 GAF, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) ................................... 9

11

12

*In re BlackRock Mut. Funds Advisory Fee Litig.*,
  No. 14-1165, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ......................................................... 3

13

14

*In re Davis N.Y. Venture Fund Fee Litig.*,
  No. 14 CV 4318-LTS-HBP, 2015 WL 7301077 (S.D.N.Y. Nov. 18, 2015) ........................ 3, 7

15

16

*Ingenhutt v. State Farm Inv. Mgmt. Corp.*,
  No. 1:15-cv-01303, slip op. (C.D. Ill. June 22, 2016) ................................................... *passim*

17

18

*Jones v. Harris Assocs. L.P.*,
  559 U.S. 335 (2010) ........................................................................................ *passim*

19

20

*Jones v. Harris Assocs. L.P.*,
  611 F. App'x 359 (7th Cir. 2015) .............................................................. 2, 4, 7, 8

21

22

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
  Civil Nos. 11-1083, 14-1611(RMB/KMW), 2016 WL 1394347 (D. N.J. Apr. 7, 2016) ....... 10

23

*Krinsk v. Fund Asset Mgmt., Inc.*,
  875 F.2d 404 (2d Cir. 1989) ................................................................................ 10

24

25

*Lynn M. Kennis Trust v. First Eagle Inv. Mgmt., LLC*,
  No. 14-585-SLR-SRF, 2015 WL 5886178 (D. Del. Oct. 8, 2015) ......................................... 7

26

27

*Redus-Tarchis v. N.Y. Life Inv. Mgmt. LLC*,
  No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015) ......................................................... 7

28

*Reso v. Artisan Partners Ltd. P'ship*,
  No. 11-CV-873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) ......................................... 7, 8

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

ii

*Turner v. Davis Selected Advisers, LP*,
    626 F. App'x 713 (9th Cir. 2015) ................................................................... *passim*

*Turner v. Davis Selected Advisers LP*,
    No. 08-CV-421-TUC-AWT, 2011 WL 13070408 (D. Ariz. June 1, 2011) ......................... 2, 9


**STATUTES**

15 U.S.C. § 80a-15(c) ........................................................................................ 10


**OTHER AUTHORITIES**

71 Fed. Reg. 36,640 (June 27, 2006) ........................................................................ 6

9th Cir. L.R. 36-3(a), (b) ................................................................................... 7

**DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**
**Case No. 16-cv-02289-VC**

iii

The plaintiffs pin their Opposition to T. Rowe Price Associates, Inc.'s ("TRP") motion to dismiss on three untenable propositions: (1) that the aggregate investment advisory fees paid to TRP by shareholders in eight Funds are apt comparators to *sub*-advisory fees that twenty-four other mutual funds pay TRP for a *subset* of services the Funds receive; (2) that TRP realized unquantified and undescribed economies of scale not shared with the Funds; and (3) that the Funds' Board's process to approve the fees was deficient *because* of the result the plaintiffs assail.   Each of these assertions is logically untenable and flatly inconsistent with the Ninth Circuit's recent decision in *Turner v. Davis Selected Advisers, LP*, 626 F. App'x 713 (9th Cir. 2015). The plaintiffs' claim that TRP performs "substantially the same" services for the Funds and for twenty-four Sub-Advised Funds, yet charges the Funds up to 73% more for ostensibly identical services, is facially untenable.   The Opposition advances no facts to support the Complaint's conclusory allegations that the differences between advisory and sub-advisory services and fees amount to a mere "label" and involve "a distinction without a difference."  Opp. 8.  But that doesn't square with the judicially noticeable reality.  The Funds and Sub-Advised Funds public filings, which plaintiffs invoke, verify that the services TRP provides to the Sub-Advised Funds are not "substantially the same" as its management services to the Funds because the sub-advisory services are a mere subset of advisory services.  The SEC-mandated disclosures also show that nearly all of the TRP-advised Funds incur *lower* aggregate management fees than the Sub-Advised Funds pay their managers, revealing the implausibility of the plaintiffs' contention that TRP's fees are beyond the range of what could be fairly negotiated.  *See Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010).  The plaintiffs' misleading comparison between the *management* fees charged to the Funds for *advisory* services and the *sub-advisory* fees charged to the Sub-Advised Funds for *sub-advisory* services runs headlong into the Supreme Court's instruction that courts avoid "inapt comparisons" by demanding a factual predicate for comparability.  *Id.* at 350.  Because the plaintiffs' comparisons are based exclusively on their own say-so and rely on contrasting patently different sorts of investment vehicles, their allegations are grounded in "inapt comparisons" and warrant dismissal.  *Turner*, 626 F. App'x at 717.

The plaintiffs' claims that TRP failed to share economies of scale with the Funds'

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

1

1    shareholders and that the Board's approval of investment management fees deserves no deference

2    are equally unsupported.   Under *Jones* and *Turner*, it is not enough just to declare that assets

3    under management ("AUM") have grown but costs have not risen proportionately to substantiate

4    a claim that economies of scale existed but were not shared.   Instead, the plaintiffs must *link*

5    specifics to plausible allegations, quantifying *how* economies of scale pushed TRP's fees *past* the

6    permissible frontier.   *Turner*, 626 F. App'x at 716-17.   Likewise, a complaint must provide

7    specific factual allegations regarding defects in the Board's process.   The circular logic that the

8    process *must* have been deficient because (according to the plaintiff) the *result* was "excessive" is

9    not plausible.   *See Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 1:15-cv-01303, slip op. at

10   8,(C.D. Ill. June 22, 2016) (dismissing Section 36(b) complaint); *Turner v. Davis Selected*

11   *Advisers LP*, No. 08-CV-421-TUC-AWT, 2011 WL 13070408, at *10 (D. Ariz. June 1, 2011)

12   (same).

13   **I.     THE PLAINTIFFS' FEE COMPARISON TO SUB-ADVISORY FUNDS DOES**
14   **        NOT MAKE OUT A VIABLE CLAIM UNDER SECTION 36(B)**

15          The plaintiffs acknowledge that *Jones* and *Turner* set forth the pleading standard for a

16   Section 36(b) claim and recognize that courts must "use[] the range of fees that might result from

17   arm's-length bargaining as the benchmark for reviewing challenged fees."   Opp. 5.   But the

18   Opposition then ignores that very standard.   The Complaint does not begin to establish a "range

19   of fees" charged to *comparable* funds for *comparable* services, and therefore disregards the

20   Supreme Court's directive in *Jones* and the Seventh Circuit's instruction on remand that fees

21   charged by comparable mutual funds "tell[] us the bargaining range."   *Jones v. Harris Assocs.*

22   *L.P.*, 611 F. App'x 359, 361 (7th Cir. 2015) (on remand from Supreme Court).   Instead, the

23   plaintiffs point to an alleged "large disparity" between the fees TRP charges to the Funds *as*

24   *adviser* and those it charges to the Sub-Advised Funds *as sub-adviser*.   That argument is simply

25   inconsistent with *Jones*, with the public record, and with precedent.

26          *Jones*:   Admonishing courts to be "wary" of "inapt comparisons," the Supreme Court

27   directed courts to weigh "the similarities and differences between the services" that clients in

28   such cases "require."   559 U.S. at 350.   For a court to undertake such an evaluation, a Section

**DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**
**Case No. 16-cv-02289-VC**

2

36(b) complaint must supply a *proper foundation* of comparability on which "similarities" and "differences" may be gauged.  Furthermore, a plaintiff's burden goes beyond establishing a predicate for comparability; to show "that fees are beyond the range of arm's-length bargaining," a plaintiff must proffer sufficient factual material for a court to "assess any disparity in fees," taking into account the "different markets for advisory services."  *Id.* at 350 n.8.  A plaintiff must allege sufficient facts to show that a "large disparity in fees" is not due to different services "*in addition to other* evidence that the fee is outside the arm's-length range."  *Id.* (emphasis added).

The Opposition disregards *Jones*'s directive by failing to create a factual foundation for comparability and for evaluation of whether TRP's fees are beyond the arm's-length range.  The plaintiffs' uncorroborated declaration that advisory and sub-advisory services are "substantially similar" ignores *Jones*'s clear warning against "categorical" consideration of different kinds of clients and leaves this Court ill-equipped to make assessments about the actual "similarities" and "differences" between services.  "If the services rendered are sufficiently different that a comparison is not probative, *then courts must reject such a comparison.*"  *See* 559 U.S. at 350 (emphasis added).[1]   The publicly filed documents upon which the plaintiffs rely – and the arithmetic they manipulate – establish precisely the opposite of the plaintiffs' *ipse dixit* allegations: the advisory and sub-advisory services are not substantially similar so as to constitute an apt comparison.  That is dispositive, because the pleading rules command plausible assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Simply put, a Section 36(b) plaintiff cannot claim that services are substantially similar by deceptively subtracting out expenses the sub-advised funds pay when SEC-filed documents establish the opposite, any more than a securities plaintiff can claim a prospectus omits a material fact when it is plainly disclosed in the offering document.

The Opposition also ignores *Jones*'s directive that a plaintiff must make factual

---

[1] The plaintiffs cite decisions that denied motions to dismiss Section 36(b) claims, but those cases did not examine prospectuses or other public documents that would easily disprove the plaintiff's allegations, did not insist that the plaintiff establish a foundation for comparability, did not look behind conclusory allegations that services were similar, or otherwise failed to apply the rigor that *Jones* requires. *See, e.g.*, *In re Davis N.Y. Venture Fund Fee Litig.*, No. 14 CV 4318-LTS-HBP, 2015 WL 7301077, at *5 (S.D.N.Y. Nov. 18, 2015); *In re BlackRock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *5 (D.N.J. Mar. 27, 2015).

allegations that fees are beyond the arm's length-range *in addition* to an alleged "disparity" between clients.  Even if the Court credited plaintiffs' naked assertion that different services and different costs do not suffice to explain different fees among different clients, the Complaint lacks *additional* averments demonstrating that TRP's fees surpass the furthest frontier of fairly negotiable fees.  To the contrary, the SEC-mandated disclosure and data from fund industry analysts reveal that TRP's fees are below mean and median fees for comparable funds.

The plaintiffs also misread *Jones* to argue that references to peer fund fees are improper. Opp. 9-10.  While *Jones* did not regard peer fund comparisons as absolutely *dispositive*, it clearly held that such comparisons are *relevant*.  559 U.S. at 349-50; *see also Jones*, 611 F. App'x at 361 (comparison to peer funds "tells us the bargaining range").  The key consideration is that *any* comparison must be based on factual support for the claimed similarity; otherwise, a comparison (like the one the plaintiffs advance here) is useless.  The plaintiffs' classification of TRP's reliance on peer funds as an "alternative fee comparison" (Opp. 9) is therefore a misnomer.  TRP offers those services and fees not as "the apt" comparison, but rather to expose as "inapt" the plaintiffs' comparison between sub-advisory and advisory fees and services.[2]

<u>Facts in the Public Record</u>:[3]  The plaintiffs do not cite a single factual allegation to corroborate their bald assertion that the services TRP performs as adviser to the Funds and sub-adviser to others are "the same or substantially the same."  Opp. 6.[4]  Instead, they "craft 'facts'

---

[2] The plaintiffs' contention that "TRP's arguments that it has a more limited role when serving as sub-adviser or bears greater 'risks' raise 'evidence-dependent contention[s] that cannot be afforded dispositive force in today's motion-to-dismiss context,'" (Opp. 8-9) (citation omitted), misses the mark.  *Turner* makes clear that *any* comparison, including the plaintiffs' here, requires a properly pled factual foundation upon which to build a legitimate contrast, and a plaintiff's say-so that services are the same is insufficient to survive a motion to dismiss.  626 F. App'x at 717.

[3] Consideration of information contained in mutual funds' public filings through judicial notice is appropriate in Section 36(b) cases.  *See, e.g.*, *Ingenhutt*, slip op. at 7; *see also* Defendant's Request for Judicial Notice (Dkt. 35).

[4] The plaintiffs also advance conclusory statements, unfit for a motion to dismiss, *see Ingenhutt*, slip op. at 6, that TRP's investment strategies, investments, portfolio managers, and other investment professionals involved in the delivery of investment advisory services to each Fund and Sub-Advised Fund are the "same," that the "same" laws and regulations govern TRP's provision of services to both sets of funds, and that TRP employs the "same" research, analysis, systems, technology, and other resources in its provision of services.  Opp. 6.  However, the

---

that are in reality speculative assertions." *Ingenhutt*, slip op. at 6. The Opposition merely reasserts the misleading comparison between advisory and sub-advisory services and fees, relying on isolated language from the Funds' prospectuses to claim that the plaintiffs have "clearly identifie[d] the fees charged to the Subadvised Funds as the appropriate arm's-length negotiated fee rate for comparison." Opp. 6. But the public record demonstrates that TRP's services as sub-adviser are a mere subset of services it provides as adviser, because TRP does much more for the advised Funds than just researching and selecting securities for portfolios, executing trades, and conducting limited investment-related reporting and compliance assistance, which it does for the Sub-Advised Funds. *See* Mot. Dismiss ("Mot.") 10-11 (contrasting TRP's comprehensive array of services as adviser with different, more limited services TRP provides as sub-adviser *and* the balance of services provided by the Sub-Advised Funds' primary advisers).[5] That additional suite of services and the business risks associated with sponsoring a fund justify additional compensation, and TRP's Motion clearly demonstrates that the Funds' management fees are both well within the "bargaining range" and *below* the corresponding advisory fee of competitors in virtually every instance. *Id.* at 9.

The twenty-four Sub-Advised Funds' public filings confirm the differences in services, related costs, and associated fees, and directly undermine the plaintiffs' proposed comparison. According to the plaintiffs, TRP's fees charged to the Sub-Advised Funds are substantially less than the fees charged to the eight Funds. But the Sub-Advised Funds' management fees, which the plaintiffs conspicuously do not cite, when juxtaposed with the Funds' management fees,

---

provisions the plaintiffs cite yield no inference that the *actual services performed* through those resources, or to accommodate such investment strategies, or to comply with such a regulatory regime, are congruent. *See* Compl. ¶¶ 91-116.

[5] In their Opposition, the plaintiffs misrepresent TRP's arguments about services by cherry-picking language from a broader list TRP included in its Motion discussing services offered by an entirely different advisor. *Compare* Opp. at 10 *with* Mot. at 10. While TRP does not purport to provide hiring and oversight of sub-advisers, the other responsibilities of comparable advisors are largely identical in terms of tasks like board reporting, 15(c) assistance, oversight of third parties, developing investment strategies, etc. Mot. at 10. In fact, the plaintiffs cherry-pick the one task that the MML Blue Chip Advisor performs that TRP does not, while ignoring all the *other* tasks that TRP performs that the MML Blue Chip Advisor does not. *Id.* (citing Roy Decl., Ex. F (MML Blue Chip Growth Prospectus), at 94; Ex. G (MML Blue Chip Growth SAI), at B-3).

---

**DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**Case No. 16-cv-02289-VC**

5

confirm that what TRP performs for the Sub-Advised Funds *must* constitute a subset of its services to the Funds, and that the additional services TRP provides to the Funds are conducted by the Sub-Advised Funds' own primary advisers.  If the plaintiffs were correct that TRP's sub-advisory services are *identical* to TRP's advisory services, then the Sub-Advised Funds' advisers would not be collecting between 10 and 51 additional basis points as primary advisers—figures demonstrated by comparing columns 4 and 5 of the chart at page 9 of the Motion.  That comparison shows that primary advisers do more than simply delegate limited investment management functions to sub-advisers, and they perform a host of additional services to earn the additional fee they collect.  It also exposes the danger the plaintiffs invite by building their comparison on extracting one *element* of the fees mutual funds pay to advisers.  Just as the Supreme Court held, courts must be wary of "inapt" comparisons and weigh "the similarities and differences between the services" that clients require.  *See Jones*, 559 U.S. at 350.  This is especially so in the mutual fund context, where the wide disparity in how mutual fund services are performed, by advisers or sub-advisers and for all or only some services, is precisely why the SEC requires mutual funds to publish aggregate fees and expenses in their Prospectuses—so investors may make appropriate comparisons of the relative costs.  *See* Fund of Funds Investments, 71 Fed. Reg. 36,640, 36,653 (June 27, 2006).  The plaintiffs' myopic focus on a single claimed "disparity" attempts to mislead the Court and exposes their comparison as inapt.

The plaintiffs' unsupported assertion that TRP's services provided in both roles are "the same or substantially the same" (Opp. at 6) is insufficient to establish a plausible predicate for an apt comparison as demanded by *Jones*.  By providing an illustration of comparative fees that does not reflect the differences between sub-advisory and advisory services, they fail to establish the actual "bargaining range" for the challenged fees, and dismissal is warranted on this basis alone.

<u>*Turner*, *Ingenhutt*, & Other Authority</u>:  The plaintiffs' invocation of an alleged "disparity" between TRP's advisory and sub-advisory fees also fails to withstand scrutiny in light of the Ninth Circuit's opinion in *Turner*, which affirmed the dismissal of an analogous Section 36(b) complaint.  626 F. App'x at 717.  Confirming that generalized allegations of comparability do not pass muster and that factual allegations laying a foundation for comparability are the *sine qua non*

---

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

6

1    of a viable Section 36(b) claim, the Ninth Circuit followed the Supreme Court's directive in *Jones*

2    to disregard "inapt comparisons" by insisting upon a factual predicate for comparability.  *Id.*

3    Instead of meeting *Turner* head-on, the plaintiffs defensively proclaim that TRP's "reliance on

4    *Turner* is misplaced" because the proffered comparison of fees and advisers in that case did not

5    involve a sub-adviser.  Opp. 9.  The plaintiffs also discount the recent *Ingenhutt* district court

6    opinion for being "founded upon different allegations."  *Id.* at 8 & n.7.  Both *Turner* and

7    *Ingenhutt*, however, demonstrate proper application of the exacting pleading standard set forth in

8    *Jones*: a plaintiff must aver sufficient facts to permit the court to "identify the outer bounds of

9    arm's length bargaining" and determine that the challenged fee exceeds those bounds.  *Jones*, 611

10   F. App'x at 360; *Ingenhutt*, slip op. at 7 (citing *Turner*, 626 F. App'x at 715-17).  These cases

11   hold that a proper comparison must first be based on a factual foundation upon which to build a

12   legitimate contrast, regardless of whether the attempted comparison involves different mutual

13   funds, separate accounts, or sub-advised funds.

14          Instead, the plaintiffs invoke non-binding and unpersuasive district court decisions

15   denying dismissal motions.  Opp. 7-10.  Those cases are inapposite because they fail to reflect the

16   key aspects of *Turner* and *Jones*.  Not only were the vast majority of the plaintiffs' cited cases

17   decided well before *Turner*, but the very few cases issued after *Turner* either neglect the Ninth

18   Circuit's decision altogether or cite it for an immaterial issue.[6]  *See Lynn M. Kennis Trust v. First*

19   *Eagle Inv. Mgmt., LLC*, No. 14-585-SLR-SRF, 2015 WL 5886178 (D. Del. Oct. 8, 2015) (failing

20   to cite *Turner*); *Redus-Tarchis v. N.Y. Life Inv. Mgmt. LLC*, No. 14-7991, 2015 WL 6525894

21   (D.N.J. Oct. 28, 2015) (same); *Davis N.Y. Venture Fund Fee Litig.*, 2015 WL 7301077, at *4

22   (citing *Turner* only for issue preclusion).  Similarly, none of the plaintiffs' cases cite the Seventh

23   Circuit's decision in *Jones* on remand.  Indeed, the plaintiffs' authorities, which denied motions

24   to dismiss on the mistaken assumption that cursory and unsupported allegations pertaining to

25   *Gartenberg* "factors" satisfied the standard of liability, are not faithful to *Jones*.[7]  *See Jones*, 559

26   _____

27   [6] Although *Turner* was not designated as precedential, it is strongly persuasive authority as one of
     only two Section 36(b) cases decided by the Ninth Circuit after the Supreme Court's decision in
28   *Jones*, and the only one decided in a motion-to-dismiss posture.  *See* 9th Cir. L.R. 36-3(a), (b).
     [7] For example, in *Reso v. Artisan Partners Ltd. P'ship*, No. 11-CV-873, 2011 WL 5826034, at *5

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

7

1  U.S. at 344 & n.5 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d

2  Cir. 1982)).   Because the *Gartenberg* "factors" merely offer a framework for analyzing the

3  decisive question set forth in *Jones* − whether the fee was so disproportionately large that it could

4  not have been the product of arm's-length bargaining − "the Supreme Court's standard is *less*

5  *favorable* to plaintiffs than [*Gartenberg*]."   *Jones*, 611 F. App'x at 360 (emphasis added).

6  Therefore, to survive TRP's motion to dismiss, the Complaint cannot just invoke the *Gartenberg*

7  "factors."  It must connect the dots between any factor and plausible allegations that TRP's fees

8  are beyond the bargaining range, by pleading *how* allegations about a factor push the fees *outside*

9  of the arm's-length range.

10
11  **II.    THE PLAINTIFFS' SPECULATION ABOUT "ECONOMIES OF SCALE" DOES
        NOT STATE A CLAIM**

12        The plaintiffs advance nothing more than conclusory allegations regarding economies of

13  scale.  The Opposition omits any specifics about why economies of scale *must* have been

14  achieved but not shared with the Funds, instead simply arguing again that the Funds' assets have

15  grown, but the nature, quality, and costs of services TRP provides to the Funds have not increased

16  proportionally.  Opp. 11-13.  Despite the plaintiffs' reliance on other district court decisions (*id.*

17  at 12), it is *Turner* that speaks loudest to the insufficiency of the plaintiffs' pleading regarding

18  economies of scale.  The district court in *Turner* held that "[m]ere allegations that the fund was

19  'large' and that there were economies of scale to be realized are insufficient."   2011 WL

20  13070408, at *9.  The Ninth Circuit agreed, holding that a "conclusory statement that '[a]s the

21  Fund grows larger, economies of scale occur for many Fund activities' and general allegations

22  about cost savings" are not sufficient to state a claim.  *Turner*, 626 F. App'x at 717.  The

23  plaintiffs' sole response is to hypothesize that the economies-of-scale allegations in *Turner*

24  somehow just passed muster but did not create a viable claim because other allegations about the

25  "substance of the advisory fee" were "lacking" and because allegations relating to economies of

26

27  (E.D. Wis. Nov. 18, 2011), the court incorrectly declared that it would "look to the Gartenberg
   factors to determine whether [plaintiff] has alleged facts sufficient [to] demonstrate a plausible
28  claim for relief."  *Id.*

1   scale alone could not "save [plaintiff's] claim from dismissal." Opp. 12. This characterization

2   flatly ignores the opinions' unambiguous language directly labeling the *Turner* economies-of-

3   scale allegations as "conclusory" and "insufficient." 626 F. App'x at 716-17.

4          In addition, the Opposition continues to ignore that TRP *did share* potential economies of

5   scale with the Funds' shareholders. Mot. 13. The plaintiffs simply reiterate the same blithe

6   conclusion that the numerous breakpoints in the individual and group fee schedules were either

7   insufficient or nonexistent. Opp. 11-12. But the plaintiffs have not alleged "any facts to show

8   that these breakpoints are an inadequate means of giving the shareholders benefits of economies

9   of scale." *Turner*, 2011 WL 13070408, at *9. Just as *Jones* prohibits courts from "assess[ing] the

10  fairness or reasonableness of advisers' fees" or "engag[ing] in rate regulation," 611 F. App'x at

11  360, it is beyond a court's purview to determine whether existing levels of breakpoints indeed

12  appropriately share economies of scale with shareholders.[8] Because the Board here expressly

13  addressed economies of scale during its 15(c) process (Mot. 13), deference to the independent

14  directors' judgment is warranted. *See Jones*, 559 U.S. at 351.

15  **III.   THE PLAINTIFFS' CIRCULAR ALLEGATIONS OF A "DEFICIENT" BOARD**
16  **DO NOT UNDERMINE THE STATUTORY MANDATE TO DEFER TO THE**
    **INDEPENDENT DIRECTORS' DECISION-MAKING**

17         The Opposition also falls short of identifying any facts plausibly suggesting that the

18  Board's process was deficient, impugning the Board's independence, or offering relevant

19  information that the Board failed to receive or consider. *See* Mot. 5, 14-15.[9] The crux of the

20

21  [8] The plaintiffs' suggestion that breakpoints are the *only* means of sharing economies of scale is
    incorrect. "[F]ee reductions[] and waivers, offering low fees from inception, or making
22  additional investment to enhance shareholder services" are other ways for funds to share
    economies of scale. *In re Am. Mut. Funds Fee Litig.*, No. CV-04-5593 GAF, 2009 WL 5215755,
23  at *52 (C.D. Cal. Dec. 28, 2009) (citations omitted), *aff'd sub nom. Jelinek v. Capital Research &*
24  *Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011). The plaintiffs say nothing about these other means
    of sharing, nor could they—the Board expressly considered economies of scale and concluded
25  that TRP's "advisory fee structure for the fund continued to provide for a reasonable sharing of
26  benefits from any economies of scale with the fund's investors." Mot. 13 n.12.

27  [9] The plaintiffs cannot dispute public disclosures corroborating the Board's conclusion, based on
    ample evidence, that "it was in the best interests of the fund and its shareholders for the Board to
    approve the continuation of the Advisory Contract (*including the fees to be charged for services*
28  *thereunder*)." Mot. 5. Although the plaintiffs malign those disclosures as "self-serving

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

9

1  Opposition is to fault the Board for not soliciting proposals from other investment advisers and

2  failing to negotiate a "most favored nation" clause.  Opp. 13-14.[10]  But those contentions are

3  "inferences that standing alone require[] more conjecture than is permissible under *Twombly* and

4  *Iqbal*."  *Ingenhutt*, slip op. at 8.  Equally without merit is the plaintiffs' further criticism of TRP's

5  dependence on case law regarding the Board process.  Their argument that reliance on *Turner* is

6  "misplaced" (Opp. 14) falls flat, as the Funds' public disclosures indisputably show that TRP *did*

7  provide all relevant information, and that the Board did in fact consider necessary data (Mot. 5)

8  — making its review process "robust" and worthy of deference.  *See Jones*, 559 U.S. at 351.

9  Finally, the plaintiffs' selective quoting of *Jones* (Opp. 15) is misleading.  The *Jones* Court

10  acknowledged the possibility that a "fee may be excessive even if it was negotiated by a board in

11  possession of all relevant information," but it also explicitly reasoned that "such a determination

12  must be based on evidence that the fee 'is so disproportionately large that it bears no reasonable

13  relationship to the services rendered and could not have been the product of arm's-length

14  bargaining.'"  559 U.S. at 351 (citation omitted).  The "robust" nature of the Board's process,

15  coupled with the plaintiffs' failure to allege any facts that TRP's fee violates *Jones*'s commands,

16  leads to the inevitable conclusion that the plaintiffs fail to state a claim under Section 36(b).

17  ## CONCLUSION

18  For the foregoing reasons, the Complaint should be dismissed with prejudice.

19

20  recitations," Opp. 14, they are filed with the SEC under laws mandating their accuracy.
Likewise, faulting the Board for relying on information provided *by* TRP is meritless because the
21  ICA itself provides that it is the directors' "*duty* . . . to . . . request and evaluate, and the *duty of an*
22  *investment adviser* . . . to furnish[,] such information as may reasonably be necessary to evaluate
the terms of any" investment advisory contract. 15 U.S.C. § 80a-15(c) (emphasis added).
23  [10] The law is clear that independent directors are not required to negotiate "the 'best deal'
24  possible" to comply with the ICA.  *See Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d
Cir. 1989) (rejecting plaintiff's claim that the "trustees had a duty to negotiate for the Fund the
25  'best deal' possible"); *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 2:14-cv-414; 2:15-cv-2923,
2016 WL 759654 *8 (S.D. Ohio Feb. 26, 2016) ("The ICA certainly does not guarantee the funds
26  the best deal possible or even a good deal."); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, Civil Nos.
27  11-1083 (RMB/KMW), 14-1611(RMB/KMW), 2016 WL 1394347, *12 (D. N.J. Apr. 7, 2016)
("The inquiry with regard to Board deference is not whether a better deal could hypothetically
28  have been reached.").

DEFENDANT T. ROWE PRICE ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM
Case No. 16-cv-02289-VC

10

1

Dated: August 5, 2016

Respectfully submitted,

2

3

Robert A. Skinner
ROPES & GRAY LLP

4

5

By:   /s/ Robert A. Skinner

6

Robert A. Skinner

7

Attorneys for Defendant
T. ROWE PRICE ASSOCIATES, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28